(No. 45065.—

ESTHER MIEHER, Admr., Appellee, v. KENNETH L. BROWN *et al.*—(International Harvester Company, Appellant.)

*Opinion filed June 4, 1973.—Rehearing denied September 27, 1973.*

GOLDENHERSH, J., dissenting.

HOAGLAND, MAUCKER, BERNARD & ALMETER, of Alton, and LORD, BISSELL & BROOKS, of Chicago (ROBERT B. MAUCKER, GORDON R. CLOSE, and RICHARD E. MUELLER, of counsel), for appellant.

PHELPS, RUSSELL & KASTEN, of Carlinville (CARL E. KASTEN, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Kathryn Mieher, while driving east on State Highway 140 near Old Ripley, Illinois, collided with the right rear corner of an International Harvester truck which was also going east and which was making a right turn off of the highway. Kathryn Mieher died as a result of injuries received in the accident. The plaintiff, Esther Mieher, as administrator of Kathryn Mieher's estate, filed a two-count action in the circuit court of Montgomery County against Kenneth L. Brown, the driver of the truck. Later, the plaintiff amended her complaint and added counts III and IV claiming damages against International Harvester Company (hereinafter defendant) for the wrongful death of the decedent, and for funeral, hospital and medical bills, alleging that the truck with which the decedent collided was negligently designed. On motion of the defendant, counts III and IV were stricken. Plaintiff appealed to the appellate court, which reversed the trial court (3 Ill. App. 3d 802), and we granted leave to appeal.

The amended complaint alleged that the defendant had negligently designed the truck in that it did not attach to the rear of it a bumper, fender or shield. The plaintiff alleged that the absence of a bumper, fender or shield

made the truck unsafe in that a vehicle colliding with the rear of it would be allowed to proceed unimpeded under the bed of the truck. From the allegations, it appears that the plaintiff's decedent sustained fatal injuries when her automobile ran under the rear of the truck and the truck bed penetrated the windshield of the car which she was driving.

The amended complaint had been considered by both parties in the trial court and in the appellate court as being based on the theory of strict liability. However, the appellate court held that it did not state a cause of action on the theory of strict liability in that it did not allege that the truck was in the same condition when it left the possession of the defendant as it was at the time of the accident which caused decedent's death. (See *Williams v. Brown Manufacturing Co., 45 Ill.2d 418, 432.*) The appellate court held, however, that the amended complaint did state a cause of action based on common-law negligence on the basis of the allegation of negligent design, and it reversed the trial court's dismissal.

The appellate court correctly concluded that the amended complaint failed to state a cause of action for strict liability. We shall therefore examine the amended complaint as one based on common-law negligence. In doing so we must test the amended complaint by the traditional requirements of such an action: the existence of a duty owed by the defendant to the decedent, the breach of that duty and the injury proximately resulting from this breach. (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 30.) The determination of the question of duty—whether the defendant and the decedent stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the decedent—is an issue of law for the determination of the court. (Prosser, Law of Torts (4th ed. 1971), sec. 45; Restatement (Second) of Torts, sec. 328B.) Since we are here determining the propriety of

the trial court's dismissal of the amended complaint, we are concerned only with that question of law presented by the pleading.

In concluding that under the facts alleged in the amended complaint the defendant owed the plaintiff's decedent the duty to exercise reasonable care in designing its motor vehicle, the appellate court placed substantial reliance on *Larsen v. General Motors Corp. (8th cir. 1968), 391 F.2d 495,* and other cases which followed the *Larsen* rationale. (*Badorek v. General Motors Corp. (1971), 11 Cal. App. 3d 902, 90 Cal. Rptr. 305; Grundmanis v. British Motor Corp. (E.D. Wis. 1970), 308 F. Supp. 303; Mickle v. Blackmon (1969), 252 S.C. 202, 166 S.E.2d 173; Dyson v. General Motors Corp. (E.D. Pa. 1969), 298 F. Supp. 1064.*) The reasoning in this line of cases, as stated in *Larsen,* is: "While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts." (391 F.2d at 502.) These cases finding that such injury-producing impacts are foreseeable conclude that the manufacturer is under a duty to design its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of collision.

The appellate court acknowledged that there is a considerable amount of authority to the contrary. The leading case supporting the contrary view is *Evans v. General Motors Corp. (7th cir. 1966), 359 F.2d 822, cert. denied, 385 U.S. 836, 17 L. Ed. 2d 70, 87 S. Ct. 83.* Cases which accepted and followed *Evans* are: *Schemel v. General Motors Corp. (7th cir. 1967), 384 F.2d 802, cert. denied, 390 U.S. 945, 19 L. Ed. 2d 1134, 88 S. Ct. 1030; Shumard v. General Motors Corp. (E.D. Ohio 1967), 270 F. Supp. 311; Walton v. Chrysler Motor Corp. (Miss. 1969), 229 So. 2d 568.* This line of cases holds that the intended use of an automobile does not include its participation in collisions despite the manufacturer's

ability to foresee the possibility that such collisions may occur. These cases hold that the manufacturer's duty extends only to insure that the vehicle is reasonably safe for its intended use.

Naturally the plaintiff in this case urges the foreseeability test of *Larsen* in our determination of whether the defendant owed to the plaintiff's decedent a duty to use reasonable care in designing its vehicle to avoid subjecting the decedent to an unreasonable risk. Just as naturally, the defendant argues against the application of the foreseeability doctrine as defined in *Larsen* and asserts that the defendant owed no duty to the decedent. The defendant likewise argues that the cases which adhere to the *Larsen* reasoning are factually different from the case now before this court and are of no help in its determination.

Both the *Larsen* cases and the *Evans* cases involve so-called "second collision" injuries by the occupants of the alleged defective vehicles. In these cases, after the original collision, the occupants were injured due to an alleged defect in the vehicle in which they were riding. Recovery was sought against the manufacturer of the vehicle in which the injured party was riding. Our case differs substantially, although it may be, in fact, a "second collision" case to the extent that the plaintiff claims that the decedent received fatal injuries occasioned by the defective design in the truck after the original collision with the truck had been brought about by other means. The question in *Larsen* and *Evans* concerned the duty of the manufacturer to design a vehicle in which it was safe to ride. The question in our case involves the duty of the manufacturer to design a vehicle with which it is safe to collide.

The plaintiff insists that the distinction is of no importance. She contends that under the rationale of *Larsen,* the defendant should have foreseen that its truck would be struck in the rear and should have taken the necessary precautions to prevent an automobile from

running under the bed of the truck. We do not believe, however, that the foreseeability rule applied in *Larsen* is intended to bring within the ambit of the defendant's duty every consequence which might possibly occur. In a sense, in retrospect almost nothing is entirely unforeseeable.

Professor Leon Green discusses foreseeability in distinguishing between the judge's role in determining the duty owed and the jury's role in determining the violation of the duty by stating:

> "[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula." Green, Foreseeability in Negligence Law, 61 Colum. L. Rev. 1401, 1417-18.

Thus, although foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, in defining the scope of the duty, other elements must be considered by the court. See Comment, Automobile Design Liability: Larsen v. General Motors and Its Aftermath, 118 U. Pa. L. Rev. 299, 300 (1969).

Section 435(2) of the Restatement (Second) of Torts provides: "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Dean Prosser

observed that this provision of the Restatement recognizes the basic idea "that liability must stop somewhere short of the freakish and the fantastic." (Palsgraf Revisited, 52 Mich. L. Rev. 1, 27.) The court in *Larsen* stated that the duty of the manufacturer was only to "use reasonable care to avoid subjecting the user of the product to an *unreasonable risk* of injury." (Emphasis added.) (391 F.2d at 502.) "Liability is imposed only when an unreasonable danger is created." 391 F.2d 495, 502 n.3.

It is apparent that the concept of duty in negligence cases is very involved, complex and indeed nebulous. The term is so ill-defined and its boundaries so indistinct that one commentator has observed: "There is a duty if the court says there is a duty." And he concluded that the court's pronouncement often reflects the policy and social requirements of the time and community. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15; see also Prosser, Law of Torts (4th ed. 1971) 325-326.

Although the injury complained of may have been, in a sense, foreseeable, we do not consider that the alleged defective design created an unreasonable danger or an unreasonable risk of injury. In the words of section 435(2) of the Restatement (Second) of Torts, "looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm" for which recovery is now sought. Public policy and the social requirements do not require that a duty be placed upon the manufacturer of this truck to design his vehicle so as to prevent injuries from the extraordinary occurrences of this case.

Counts III and IV of the amended complaint do not state a cause of action against the defendant on the theory of common-law negligence.

The judgment of the appellate court is reversed and the judgment of the circuit court of Montgomery County is affirmed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

The majority have correctly concluded that the rationale of *Larsen* and the cases which follow it is that since injury-producing impacts are foreseeable "the manufacturer is under a duty to design its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of collision." The question in this case, however, does not, as stated by the majority, involve the duty of the manufacturer to design a vehicle "with which it is safe to collide." The question involved is the extent of the duty of the manufacturer to design its vehicle so as to avoid the unreasonable risk of injury in the event of collision, whether the injured be a passenger in that vehicle, another vehicle, a pedestrian, or a bystander.

Upon a close reading of the opinion it appears to me that the majority recognize that the duty owed by the manufacturer is to design his vehicle so as to avoid the unreasonable risk of injury in the event of collision irrespective of whether the injured is within or without the particular vehicle, and insofar as the opinion so holds, I concur. I do not agree, however, that the amended complaint, upon the facts alleged, fails to state a cause of action against the manufacturer, and I would affirm the judgment of the appellate court.